IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| Patent Group, L.L.C. | ) | |
| | ) | |
| Relator, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:10-cv-354 |
| | ) | |
| Grand Enterprises West, Inc. | ) | |
| Defendant. | ) | Jury Trial Demanded. |

## DEFENDANT GRAND ENTERPRISES WEST, INC'S MOTION TO TRANSFER PURSUANT TO 18 U.S.C. § 1404 (A) AND BRIEF IN SUPPORT

COMES NOW, Grand Enterprises West, Inc., ("Grand") Defendant in the above-entitled cause, and files this Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) and Brief in Support, and would respectfully show the Court as follows:

### I.   INTRODUCTION

Late last year, the Federal Circuit decided *Forest Group v. Bon Tool Co.*, expanding the reach of the patent false marking statute, 35 U.S.C. § 292, to require civil penalties on a "per-article" basis. 590 F.3d 1295, 1304 (Fed. Cir. 2009). The statute is one of a handful of federal *qui tam* statutes still on the books, and it carries a maximum $500 penalty for every "offense." By permitting penalties to be assessed on a "per-article" basis, the *Forest Group* decision has opened the floodgates to a surge of false marking suits against manufacturers who market thousands or millions of patented products each year. Because the statute splits the penalty 50-50 between the *qui tam* relator and the Government, the possible personal gain for private plaintiffs (or "marking trolls") in false marking litigation has become unlimited. *See Donald J. Rupert, Trolling for Dollars: A New Threat to Patent*

*Owners*, 21 No. 3 INTELL. PROP. & TECH., L.H. 1 (2009), *cited in Forest Group*, 590 F.3d at 1303.

The instant case is just such a suit. Grand sells, among other products, a Pow'r Wrap baseball bat weight - the allegedly mis-marked product in this case. Plaintiff Patent Group, LLC ("Patent Group") is a *qui tam* relator who apparently is a Texas Organization and has sued Grand under § 292, alleging that the patent(s) covering the aforementioned product expired.

One of the threshold problems with this case is that it has no connection to this District. Grand therefore moves this Court to transfer this action under 28 U.S.C. § 1404(a) to the United States District Court for the District of Minnesota, Minneapolis Division ("the Minneapolis Division").[1]

The "center of gravity" of this case is localized to the Minneapolis Division. Grand is a small company of one employee within the Minneapolis Division. Declaration of Alan Wales, attached as Exhibit A, ¶ 4 (hereinafter "Wales Decl."). Grand's offices are located solely in Bloomington, Minnesota, which is within the Minneapolis Division. (Wales Decl. ¶ 4). Grand has been in business since 1989, and its offices have always been located within the Minneapolis Division. (Wales Decl. ¶ 4). All of Grand's employees are located in the Minneapolis Division of Minnesota. (Wales Decl. ¶ 4). The manufacturing of the Pow'r Wrap weight is done in the Minneapolis Division. Furthermore, Grand's product development, marketing, packaging, selling and distribution activities for the Pow'r Wrap all have occurred in the Minneapolis Division of Minnesota. (Wales Decl. ¶ 4). As a result, all decisions concerning Grand's advertising, marketing and patent marking

---

[1] This motion is one of the two motions that Grand has filed today: (1) a Motion to Dismiss under Rule 12(b)(6) and Rule 9(b) for failure to state a claim; (2) and this, Grand's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). In the interest of judicial economy, Grand respectfully requests that the Court consider the Motion to Transfer First, such that the same district court that otherwise will e dealing with the merits of the case (*i.e.*, the transferee court, if the Court grants the Motion to Transfer, or this Court, if the Court denies the motion) can address the remaining substantive motions.

for the Pow'r Wrap were made in the Minneapolis Division. (Wales Decl. ¶ 4). In fact, all of the alleged acts by Grand giving rise to this litigation occurred in the Minneapolis Division, and all witnesses and documents relevant to this patent marking litigation are located in the Minneapolis Division of Minnesota. (Wales Decl. ¶¶ 1-4). The only connection this case has to the Eastern District of Texas is that the *qui tam* relator filed this case in the Eastern District of Texas. But, the choice of venue of a *qui tam* relator has little to no weight under § 1404 because the real party in interest is the United States. Transfer of this case to the Minneapolis Division would serve the convenience of the parties, the convenience of the witnesses, and the interests of justice.

## II.   ARGUMENT

### A.   Standards for Section 1404(a) Transfers

The Fifth Circuit recently clarified the standard that district courts within the circuit should apply in determining motions to transfer venue. *See In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc) (hereinafter "*Volkswagen*"). The *Volkswagen* court held that the "statute requires only that the transfer be "[f]or the convenience of the parties, and in the interest of justice." *Id*. 314. In interpreting this standard, the court emphasized that although some deference must be shown to the plaintiff's choice of venue, that deference is outweighed where the moving party shows "good cause." *Id*. Good cause is shown "[w]hen the movant demonstrates that the transferee venue is clearly more convenient" than the plaintiff's choice of venue. *Id*.

The analysis of the merits of a § 1404(a) motion to transfer is a two-part inquiry. *See Volkswagen*, 545 F.3d at 314. First, the Court must determine if the case might have been brought in the transferee court. *Id*. Second, the court must determine whether the balance of factors under § 1404(a) weighs in favor of transferring the action to the transferee court. *Id*. Under *Volkswagen*,

the court is to consider several "private" and "public interest" factors in order to determine whether a transfer of venue is clearly more convenient. The private interest factors are as follows: the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are as follows: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws. *Id.*[2] None of these factors are dispositive, and they are not necessarily exhaustive or exclusive. *Id.* (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004).

These factors weigh heavily in favor of transfer to the Minneapolis Division of Minnesota, where suit could have and should have been brought.

**B.      Suit Could Have Been Brought in the Minneapolis Division of Minnesota Because Grand is Headquartered in that Division**

There is no question this suit originally could have been filed in the United States District Court for the Minneapolis Division of Minnesota. First, Grand is headquartered in Bloomington, Minnesota in the Minneapolis Division. (Wales Decl. ¶ 4); *see also* (Complaint ¶ 2.) Therefore, Grand "resides" in that division (28 U.S.C. § 1391(b)(1)), "a substantial part of the events or omissions giving rise to the claim occurred" in that division (*id.* § 1391(b)(2)), Grand "subject to personal jurisdiction" in that district (*id.* § 1391(c)), and Grand can be "found " in that district (*id.*

---

[2] Although these public and private interest factors are developed from *forum non conveniens* case law, the *Volkswagen* decision makes clear that the "substantially outweigh" test required for a finding of *forum non conveniens* is inapplicable and too high a standard to apply to a motion to transfer venue. 545 F.3d at 314.

§ 1395(a)).

## C.   Relator Plaintiff's Choice of Forum is Entitled to Little Deference

The only factor on Patent Group's side of the scale is its decision to file this *qui tau* action

in the Eastern District.  Patent group's choice of forum in this action, however, should carry little

weight in this Court's consideration of Grand's motion to transfer.

Patent Group is a *qui tam* relator.  In a *qui tam* case, the United States is the real plaintiff in

interest. *Timson v. Simpson*, 518 F.3d 870, 873 (11th Cir. 2008); *U.S. v. Texas Tech Univ.*, 171 F.3rd

279 (5th cir. 1999).  "Accordingly, federal district courts throughout the nation have held that, in *qui*

*tam* actions, the plaintiff's choice of venue is not entitled to the same level of deference as in other

actions." *United States ex rel. Roop v. Arkray* USA, 2007 WL 844691, *2 (N.D. Miss. 2007)

(collecting cases).  In *qui tam* actions, as in class actions, the plaintiff's choice of forum has little or

no weight because the potential plaintiffs "are dispersed or have no real interest in the outcome of

the action or in litigating in the mutually selected forum" 15 WRIGHT, MILLER & COOPER §

3848, AT 127-29.  The Supreme Court explained the rationale of this view in the context of a

shareholders' derivative action:

> [W]here there are hundreds of potential plaintiffs, all equally entitled voluntarily to
> invest themselves with the corporation's cause of action and all of whom with equal
> right go into their many home courts, the claim of any one plaintiff that a forum is
> appropriate merely because it is his home forum is considerably weakened.

*Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524 (1947).  Thus, Patent Group' choice of

forum "should be given relatively little weight." *United States ex rel. LaValley v. First Nat'l Bank*

*of Boston*, 625 F. Supp. 591, 594 (D.N.H. 1985).

As shown below, none of the operative facts occurred in the eastern District, and none of the

witnesses are located here. Patent Group's decision to use Grand for false patent marking here, when this District has no connection with the acts at issue, carries very little weight. *See PartsRiver, Inc. v. Shopzilla, Inc.*, 2009 WL 279110 (E.D. Tex., Jan. 30, 2009) ("*PartsRiver*"). All the other relevant factors weigh in favor of granting Grand's motion to transfer venue to the Minneapolis Division.

**D.     Private Factors Weigh in Favor of Transfer to the Minneapolis Division**

The Eastern District has received an influx of motions to transfer venue in patent cases since the decisions favoring transfer were rendered in the Fifth Circuit's *Volkswagen* decision, and by the Federal Circuit in *In re TS Tech USA Corp.* 551 F.3d 1315 (Fed. Cir. 2008) and *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009). Last year, Eastern District Chief Judge David Folsom issued a non-published opinion in which he reviewed many of the Eastern District's post-*Volkswagen* transfer opinions, and distinguished those where transfer was warranted from those where it was not. *ICHL, LLC V. NEC Corp. of America*, 2009 WL 1748573 (E.D. Tex., June 19, 2009) ("ICHL"). Judge Folsom noted that the central question is whether or not the underlying dispute is focused on some localized region away from the Eastern District of Texas. *Id.*, *2. Here, the relevant events, witnesses, and evidence are virtually all located in and around the transferee forum, the Minneapolis Division. They are not scattered throughout the country, and they certainly are not located in the Eastern District of Texas. This is the exact type of case in which the Eastern District has recognized that transfer is warranted.

**1.     Sources of Proof Are Located in Minnesota**

**a.     All of the Witnesses Are Located in Minnesota**

The crucial fact witnesses in this action – third parties as well as the Grand employees, reside in the Minneapolis Division of Minnesota.   (Wales Decl., ¶¶ 2-4).   These facts support the

"localized" nature of this dispute and support transfer to the Minneapolis Division. *See PartsRiver*, 2009 WL 279110; *see also Ross v. Buckeye Cellulose Corp., 980 F.2D 648,655* (11ᵗʰ Cir. 1993) (holding that district court did not abuse discretion in transferring venue when it was reasonable to assume that overwhelming majority of witnesses whose testimony might be relevant to the trial resided in the transferee forum).

In addition, the testimony of Grand's sole employee who resides within the Minneapolis Division will be critical to this case. (Wales Decl., ¶ 2-4). Among other subjects, Grand's officer and sole employee will testify that Grand did not mark or advertise its products with an intent to deceive, which is a core issue in this case. Further, the testimony of additional Minnesota-based witnesses may be required as the case develops. (Wales Decl., ¶ 2). Finally, there are no critical witnesses that Grand knows of who reside in Texas. (Wales Decl., ¶ 3).

### b.    The Overwhelming Majority of Critical Documents are in Minnesota

The overwhelming majority of documentary evidence will be at Grand's headquarters in Bloomington, Minnesota. (Wales Decl., ¶ 5). It would be more expensive and difficult to either transport or copy these documents for transport to Texas. (Wales Decl., ¶ 5). Likewise, access in Texas to any third-party documents located in Minnesota would impose increased expense and hardships on the parties and producing entities. Like the location of witnesses, this factor supports transferring this action to the Minneapolis Division. *See, e.g., Volkswagen*, 545 F.3rd 304; *Ross*, 980 F2d at 655 (holding that district court did not abuse discretion in transferring venue where it was undisputed that plant and employment records relevant to lawsuit were located within transferee forum); *Ardco*, U.S.P.Q. at 1386-87 (granting transfer where all of the documents, "including any design documents, manufacturing documents, and marketing and sales documents." and the

custodians of these documents were located in transferee forum).

2.    **The Availability of Compulsory Process Favors the Minneapolis District of Minnesota.**

In order to defend against this case, Grand may need to call former employees and vendors to testify regarding the development of the Pow'r Wrap products and the patent covering the product, as well as to testify regarding Grand's sale and marketing of the product. Third party witnesses reside in the Minneapolis Division of Minnesota. (Wales Decl., ¶ 2.) Respectfully, this Court cannot issue compulsory process for these witnesses, as they live halfway across the country; but the Minneapolis Division of Minnesota can do so since these witnesses reside either within the Division or within subpoena range.

With respect to compulsory process, the facts in this case are similar to the Federal Circuit case *In re Genentech.* 566 F3d at 1345. There are several witnesses within the subpoena power of the Minneapolis Division and no witness who can be compelled to appear in the Eastern District of Texas. "The fact that the transferee venue is a venue with usable subpoena power here weights in favor of transfer, and not only slightly." *In re Genentech*, 566 F3d at 1345; *see also Novartis Vaccines and Diagnostics, Inc. v. Wyeth, et al.*, 2010 WL 1374806 (E.D. Tex. March 31, 2010). As the Minneapolis Division maintains subpoena power over non-party witnesses in Minnesota, whereas the Eastern District has no subpoena power over the non-party witnesses in Minnesota, this factor weighs clearly in favor of transfer.

3.    **The Cost of Attendance of Willing Witnesses Favors the Minneapolis Division**

The third private interest factor is the cost of attendance for and convenience of willing witnesses. "The court is to consider whether substantial inconvenience will be visited upon key fact

witnesses should the court deny transfer.... Additionally, the convenience of non-party witnesses is accorded greater weight than that of party witnesses." *ICHL*, 2009 WL 1748573, *10 (quoting *Shoemaker v. Union Pacific Railroad Co.*, 233 F. Supp. 2d 828, 832 (E.D. Tex. 2002).

Importantly, the Fifth Circuit has instituted a 100-mile threshold when evaluating the inconvenience to witnesses. A forum is proportionally more inconvenient when the distance between an existing venue for trial of a matter and a proposed venue, in which willing witnesses reside, is more than 100 miles. *In re Volkswagen AG*, 371 F.2d 201, 204-205 (5th Cir. 2004). Here, presuming Grand's witnesses are willing, the approximate 1,000 mile distance between Minnesota and Texas emphasizes the fact that the Minneapolis Division of Minnesota is indeed the only appropriate venue. As stated by the Volkswagen court: "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.*

### 4.    Other Private Factors: the Center of Gravity of this Litigation Lies Squarely in the Minneapolis Division

The false patent making claim at issue arose in the Minneapolis Division, where Grand is located. The "place of the alleged wrong" or "location of the operative events" is an important factor in the § 1404(a) analysis. *In re Horseshoe Entertainment*, 337 F.3d 429, 435 (5th Cir. 2003). This is especially true in patent cases. *See Proshot Golf v. Leading Edge Techs.*, 1996 WL 673265, *2 (N.D. Tex. 1996) (In an infringement case, the court said, "[B]ecause the allegedly infringing technology was marketed and sold nationwide, the "center of gravity" of activity relating to the infringement suit is logically the place where the infringing party designed and manufactured the

technology."). "Transfer to a corporate defendant's place of business is particularly likely in p. . .

cases." 15 WRIGHT, MILLER & COOPER § 3849, at 181-82 (collecting cases).

In this case, the "center of gravity" is clearly the Minneapolis Division of Minnesota. All of

Grand's conception, reduction to practice, research and development work and manufacturing for

the Pow'r Wrap is done in the Minneapolis Division (Wales Decl. ¶ 4). All of its marketing

decisions emanate from Minnesota. (Wales Decl. ¶ 4); *see, e.g. Laitram v. Hewlett-Packard Co.,*

120 F. Supp. 2d 607, 609-10 (E.D. La. 2000) ("A fundamental principle" guiding the Court's

analysis is that "litigation should proceed 'in that place where the case finds its 'center of gravity.'

Relevant considerations in determining the center of gravity in a given case include the location of

a product's development, testing, research, and production, and the place where marketing and sales

decisions were made.") (citations omitted); *Fuji Photo Film Co. v. Lexar Media, Inc.* 415 F. Supp.

2d 370, 375 (S.D.N.Y. 2006) (transferring patent infringement action to the transferee forum, where

the relevant products were designed, developed, and produced).

Section 1404(a) also refers expressly to the "convenience of the parties." For these reasons,

it would certainly be more convenient for this action to proceed in the Minneapolis Division. Patent

Group's convenience does not outweigh the collective convenience established by the foregoing

facts. *See Ardco Inc. v. Page, Ricker, Felson Marketing, Inc.,* 25 U.S.P.Q. 2d 1382, 1386-87 (N.D.

Ill. 1992) (despite plaintiff corporation's filing patent case in district where its headquarters and

principal place of business were located, granting motion to transfer to transferee forum because

"[a]ll of [defendant's] activities in researching, designing, building, prototypes, and manufacturing...

occurred in California . . . [and] almost all of the many witnesses who will be called by [defendant]

to prove its case" are located in California); *see also PartsRiver,* 2009 WL 279110.

Thus, in the interests of justice and for the convenience of the parties and witnesses, the

Minneapolis Division is clearly the most appropriate venue.

**E.**   **Public Interest Factors Weigh in Favor of the Minneapolis Division**

    **1.**   **The Minneapolis Division is No More Congested Than the Eastern District of Texas**

According to the statistical reports provided by the Administrative Office of the Courts, trials

in the Minneapolis Division are completed in approximately the same amount of time as those in the

Eastern District of Texas.[3]  Thus, this factor is neutral.

    **2.**   **The Eastern District Has No Local Interest**

Transfer is appropriate where none of the operative facts occurred in the division and where

the division has no particular local interest in the outcome of the case. *See In re Volkswagen*, 545

F.3d at 318.  Furthermore, the Supreme Court has stated that "[j]ury duty is a burden that ought not

to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil*

*Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).

Grand has not directly sold the the Pow'r Wrap in this District, though Grand does sells the

product through retailers throughout the United States, and its Texas sales are only a relatively small

percentage of its overall nationwide sales.   (Wales Decl. ¶ 6).   Under the authority of the Fifth

Circuit, and elsewhere, this is simply not enough to confer a local interest upon the Eastern District

in adjudicating this case. *See, Volkswagen*, 545 F.3d at 318 (finding no local interest based on the

local availability of a product subject to a product liability claim, as such rationale could apply to

virtually any judicial district in the U.S. and would leave no room for consideration of those actually

---

[3] See http://www.uscourts.gov/Statistics/FederalJudicialCaseloadStatistics/FederalJudicialCaseloadStatistics2009.aspx

affected by the controversies and event giving rise to the case); *see also TS Tech*, 551 F.3d at 1321

(disagreeing with the Eastern District's opinion that its citizens had a "substantial interest" in having

the case tried locally because several of the vehicles were sold in the district, the Federal Circuit

stated that "vehicles containing [the allegedly infringing technology] were sold through the United

States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful

connection to this case than any other venue."); *Anchor Wall Systems, Inc. v. R&D Concrete*

*Products, Inc.*, 55 F. Supp. 2d 871, 874-75 (N.D. Ill. 1999); *Boreal Laser Inc. v. Coherent, Inc.* 22

U28.P559, 1560 (S.D.N.Y.) 1992) (granting transfer to Northern California where "facts underlying

the cause of action have no material connection to this forum," "relevant documents, records, and

production facilities" were in California, and stating that "sales alone are not enough to establish a

material connection to the forum if, as is true here, "[d]efendants goods are sold in many states.'"})

(quoting *Matra Et. Manurhin v. International Armament Co.*, 628 F. Supp. 1532, 1536 (S.D.N.Y.

1986)).

The Minneapolis Division, on the other hand, has a significant local interest in hearing this

case. Indeed, there is an interest in "having localized controversies decided at home." *Gulf Oil*, 330

U.S. at 509. Patent Group's decision to file the Complaint in the Eastern District of Texas is the *only*

nexus this action has with the Eastern District of Texas. Conversely, the factual events surrounding

the false patent marking claim occurred at Grand's corporate home in the Minneapolis Division.

(Wales Decl. ¶ 2-4). In addition, crucial fact witnesses in this action – third parties as well as Grand's

employee – reside in the Minneapolis Division. (Wales Decl. ¶ 1-4). Overall, this litigation's center

of gravity is in Minnesota's Minneapolis Division. Transferring this matter there will serve the

interests of justice because the citizens of Minnesota have a greater interest in this dispute than the

citizens of Texas. "[T]he administration of justice is served more efficiently when the action is litigated in the forum that more clearly encompasses the locus of operative facts and consequently may have a particular interest in the proper resolution of the dispute." 15 WRIGHT, MILLER & COOPER § 3854, at 293. As a general rule in patent cases, "the preferred forum is that which is the center of gravity of the accused activity." *Ricoh Co. v. Honeywell, Inc.* 817 F. Supp. at 482 n. 17.

Furthermore, the State of Minnesota has an interest in monitoring its corporations to ensure that they establish policies and procedures that protect its citizenry. Courts in recent cases have transferred several false marking cases to the defendant's home districts. *See Brule Research Assocs. v. A.O. Smith Corp.* No. 1:08cv977, Doc. 21 (E.D. Va. Dec. 19, 2008) (Brinkeman, J.) (Transferring false marking case from Eastern District of Virginia to Eastern District of Wisconsin, where defendant headquartered); *San Francisco Tech v. Adobe Sys.*, 2010 WL 1462571 (N.D. Cal. April 13, 2010) (Seeborg. J.) (Ordering transfers from Northern District of California to the District of Minnesota, The Southern District of Indiana, and the Northern District of Georgia, where three defendants were headquartered respectively); *Harold Josephs v. Sigma-Aldrich*, U. S. District Court, Eastern District of Michigan, Southern Division, No. 10-10660 (ordering on May 21, 2010 ordering transfer to the Eastern District of Missouri where defendant's principal place of business is located).

The result should be the same here.

3.   **Both Forums are Familiar with the Law and No Conflicts Should Arise with Transfer of this Case to the Minneapolis Division**

The third (familiarity of the forum with governing law) and fourth (reducing likelihood of conflict of laws) public interest factors are not significant here, as the matter arises entirely under patent law. A federal law controls this lawsuit, either court is well suited to preside over this matter

with respect to the governing law issue.  Similarly, because federal law primarily applies, it is not anticipated that many (if any) true conflict of laws issues will arise.

### III.   CONCLUSION AND PRAYER FOR RELIEF

The factors under 28 U.S.C. § 1404(a) weigh in favor of transferring this action.  Patent Group's choice of venue has little or no weight given that this is a *qui tam* action.  Otherwise, this case's center of gravity lies entirely within the Minneapolis Division of Minnesota.  The Court should transfer it there for the convenience of the parties, the convenience of the witnesses and in the interests of justice.

WHEREFORE, PREMISES CONSIDERED, Defendant Grand prays this Court will enter an order transferring this case to the United States District Court for the District of Minnesota, Minneapolis Division.

Respectfully submitted,

**WHITE SHAVER**
205 W. Locust
Tyler, Texas 75702
(903) 533-9447
(903) 595-3766 Facsimile

By: _____
Clay M. White
State Bar No. 21292220
Adam B. Allen
State Bar No. 24038738
**ATTORNEY FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2010, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court.

_____
ADAM B. ALLEN

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with Stafford Davis, counsel for Plaintiff Patent Group, in accordance with the meet and confer requirement in Local Rule CV-7(h).  We tried to resolve the issues in the instant Motion to Transfer, but discussions have conclusively ended in an impasse, and the Motion is opposed, leaving an open issue for the Court to Resolve.

_____
ADAM B. ALLEN